Filed 1/29/21; Certified for publication 2/23/21 (order attached)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| AREA 55, LLC, et al.,<br><br>    Plaintiffs and Appellants,<br><br>    v.<br><br>NICHOLAS & TOMASEVIC, LLP, et al.,<br><br>    Defendants and Respondents. | D075648<br><br><br><br>(Super. Ct. No. 37-2018-00007426-CU-NP-NC) |

APPEAL from an order and a judgment of the Superior Court of San Diego County, Earl H. Maas, III, Judge.  Reversed and remanded with directions.

The Office of Michael Tenenbaum, Michael Tenenbaum; Law Office of Aryeh Kaufman and Aryeh Kaufman for Plaintiffs and Appellants.

Pettit Kohn Ingrassia Lutz & Dolin, Douglas A. Pettit and Jocelyn D. Hannah for Defendants and Respondents.

Area 55, LLC, and SAB Holdings, LLC (together, Appellants) appeal from an order of the trial court granting the special motion to strike their first amended complaint for malicious prosecution (complaint) and the

related judgment of dismissal in favor of Nicholas & Tomasevic, LLP (N&T), Craig Nicholas, and Alex Tomasevic (together, Respondents). The trial court ruled that the complaint was a "SLAPP" and struck it pursuant to Code of Civil Procedure section 425.16 (section 425.16; at times, anti-SLAPP statute; further unidentified statutory references are to the Code of Civil Procedure).[1]

The prior action, in which Appellants were named as defendants, was dismissed for failure to prosecute. As we explain, the trial court erred in ruling that Appellants cannot establish that the prior action was not terminated on its merits. Thus, for purposes of the anti-SLAPP statute, the court erred in ruling that Appellants did not demonstrate a probability of prevailing on the merits of their malicious prosecution claim.

In addition, in our de novo review, we exercise our discretion to reach the additional issues raised by the parties in the motion and opposition, rather than to remand the matter for trial court consideration in the first instance. In doing so, as we explain, we will conclude that Appellants made a sufficient prima facie showing of the remaining elements of their claim and that Respondents, in their showing, did not defeat Appellants' claim as a matter of law.

Accordingly, we will vacate the order granting Respondents' special motion to strike the complaint and reverse the judgment. On remand, we will direct the court to enter a new and different order denying Respondents' special motion.

_____

[1] " ' "SLAPP" is an acronym for "strategic lawsuit against public participation." ' " (*Sweetwater Union High School Dist. v. Gilbane Building Co.* (2019) 6 Cal.5th 931, 939, fn. 5 (*Sweetwater*).) The anti-SLAPP statute, which sets forth the standards and the procedure for striking the complaint in a SLAPP, is found at section 425.16. (*Id.* at p. 940.)

## I.  STATEMENT OF THE CASE

In the complaint in this action, Appellants named Respondents in one cause of action for malicious prosecution.  Respondents include California attorneys Nicholas and Tomasevic and, as alleged in the complaint, the "purported California limited liability partnership" N&T, which is the successor to Nicholas & Butler, LLP (N&B), "also a purported California limited liability partnership."  Appellants include the successors to Vinturi, Inc. (Vinturi), which, according to the complaint, are responsible for the development and sales of the " 'Vinturi Essential Wine Aerator' (the 'Vinturi Aerator') for wine-lovers who want to enhance their experience of drinking wine."  The United States Patent and Trademark Office issued four patents for the Vinturi Aerator.

Underlying and forming the factual basis for the present malicious prosecution lawsuit is a class action lawsuit in San Diego County Superior Court, case No. 37-2010-00050074-CU-BT-NC, originally entitled *Roehrig v. Exica, Inc.* (Class Action).  Beginning in January 2010 and continuing through the final judgment of dismissal of the Class Action in June 2015, Respondents and N&B were counsel of record for the plaintiff and plaintiff class, and Appellants were the defendants.

A.    *The Prior Action (the Class Action)*[2]

1.    *The Vinturi Aerator*

Rio Sabadicci invented a red wine aerator.  Vinturi, which was wholly owned by Area 55, Inc., produced the aerator for sale.  Sabadicci was the chief executive officer of these corporations.

---

[2]    On our own motion, we take judicial notice of our opinion in *Roehrig v. Area 55, Inc.* (Apr. 29, 2016, D066790) [nonpub. opn.] (*Roehrig*).  (Evid. Code, §§ 459, 452, subd. (d).)  Both sides also included a copy of *Roehrig* in the

3

Vinturi started selling the Vinturi Aerator in 2006. Retail stores, wineries, restaurants, and bars carried the product. A company located in Pomona, California, manufactured the body of the Vinturi Aerator. As sold to the public, the box contained the Vinturi body with a decorative black silicone band, a rubber stand, and a filter screen. The silicone band, stand, and packaging were made in China, transported to the United States, and attached to the Vinturi body in the United States. Vinturi then placed the final aerator product into the stand and reclosed the box.

From 2006 until 2010, Vinturi sold its aerator in the United States with the statement " 'VINTURI IS MANUFACTURED IN THE USA' " printed on the bottom panel of the box, which measured approximately 3.1 inches square. Prior to making this representation, Sabadicci reviewed the Federal Trade Commission Web site, from which he concluded that Vinturi could accurately represent that the Vinturi Aerator was made in the United States because the body, which is 95 percent of the product, was made in the United States.

2.    *Roehrig Files the Class Action*

In November 2009, Tom Roehrig purchased a Vinturi Aerator for $39.99 at a retail store. Roehrig saw the product at a friend's house, and after learning that it was made in the United States, he decided to buy the aerator even before going to the store.

---

evidence they submitted in support of and in opposition to Respondents' motion in the trial court. *Roehrig* is an appeal from a final prejudgment order in the Class Action. Appellants here are the successors in interest to the respondents in *Roehrig*, and Respondents here were counsel of record to the appellant in *Roehrig*. In addition to the record on appeal, our factual recitation of the Class Action in the text, *post*, is taken in significant part from *Roehrig*.

A little over a month later, in January 2010, the firm of N&B, including attorney Nicholas, filed the Class Action against Appellants (as the defendants).  Named plaintiff Roehrig alleged various consumer fraud claims in four causes of action based on alleged violations of:  Civil Code section 1750 et seq. (Consumer Legal Remedies Act; CLRA); Business and Professions Code section 17200 et seq. (unfair competition); Business and Professions Code section 17500 et seq. (false advertising); and, specifically, Business and Professions Code former section 17533.7 (sale of goods produced outside the United States bearing words "Made in U.S.A.").  Under the various statutes, the Class Action complaint sought relief for the basic violation of Business and Professions Code former section 17533.7, which at the time of the filing of the Class Action provided:  "It is unlawful for any person, firm, corporation or association to sell or offer for sale in this State any merchandise on which merchandise or on its container there appears the words 'Made in U.S.A.,' 'Made in America,' 'U.S.A.,' or similar words when the merchandise or any article, unit, or part thereof, has been entirely or substantially made, manufactured, or produced outside of the United States."[3]  (Stats. 1961, ch. 676, § 1.)

---

[3]  By the time of the appeal in *Roehrig*, the Legislature had amended Business and Professions Code section 17533.7 to add subsections limiting the reach of the statute.  (Stats. 2015, ch. 238, § 1, eff. Jan. 1, 2016.)  For example, newly enacted subdivision (b) provided that the section did not apply "to merchandise made, manufactured, or produced in the United States that has one or more articles, units, or parts from outside of the United States, if all of the articles, units, or parts of the merchandise obtained from outside the United States constitute not more than 5 percent of the final wholesale value of the manufactured product."  (Bus. & Prof. Code, § 17533.7, subd. (b).)

By May of 2010, N&B, including attorney Nicholas, had filed a first and second amended complaint on behalf of Roehrig, alleging the same four causes of action against the same defendants.

Representing the named plaintiff, in September 2011 N&B, including attorneys Nicholas and Tomasevic, moved for class certification and for appointment as class counsel. In support of the motion, Roehrig submitted a declaration in which he testified that, when he purchased his Vinturi Aerator, he believed and relied on the representation that it was made or manufactured in the United States, and that, if he had known otherwise, he would have considered competing aerators, especially if any were manufactured in the United States. Following full briefing and oral argument, the court granted the motion, certifying the plaintiff class and appointing N&B as class counsel.

In July 2013, Appellants (as the defendants) moved to dismiss the case. Appellants presented evidence that Roehrig had abandoned his claims against Appellants *in 2010*, nine months after filing the Class Action and almost a year before moving for class certification, when he filed bankruptcy and did not list his claims in the Class Action lawsuit on his bankruptcy schedules. Treating the motion as a motion for judgment on the pleadings, the court granted the motion with 20 days leave to amend to add a new class representative.

Appellants (as the defendants) brought a motion for prevailing party attorney fees against Roehrig. Relying on Civil Code section 1780, subdivision (e),[4] Appellants argued that they were the prevailing defendants

---

4     Civil Code section 1780, subdivision (e) provides in part: "Reasonable attorney's fees may be awarded to a prevailing defendant upon a finding by

in Roehrig's claim under the CLRA and that Roehrig did not prosecute the Class Action in good faith. Finding that Roehrig acted in both subjective and objective bad faith in filing the Class Action, the trial court granted Appellants' motion for attorney fees against Roehrig.[5] Roehrig appealed, and in April 2016 this court affirmed the order granting the motion, concluding in relevant part: "The record supports the trial court's finding 'Roehrig was interested in buying a lawsuit to make money, or [to] help his friend [Sean Rones].' " (*Roehrig, supra*, D066790.)

---

the court that the plaintiff's prosecution of the [CLRA] action was not in good faith."

[5] As will become relevant in our discussion of malice at part II.B.3., *post*, in support of its ruling—which this court affirmed in *Roehrig, supra*, D066790—the trial court in the Class Action made a number of factual findings.

At his June 2011 deposition in the Class Action, Roehrig testified that, *before* he purchased the Vinturi Aerator, he had a conversation with Sean Rones, Roehrig's high school friend who was in the business of selling a competing wine aerator. Rones told Roehrig that the Vinturi Aerator was made in China, not " 'Made in the USA' " as advertised. When Roehrig *later* went to the store and bought it, he looked only at the Vinturi Aerator; but he never used it. Instead, Roehrig contacted N&B, by inference a recommendation from Rones, and decided to file the Class Action. Once Appellants (defendants in the Class Action) subpoenaed Rones for his deposition, *N&B prepared* (and Roehrig signed) an errata sheet to Roehrig's deposition transcript that deleted all 35 references to Rones "in an attempt to eliminate information about Rones's involvement in the purchase of the [Vinturi A]erator and the filing of this [Class Action]." (*Roehrig, supra*, D066790.)

7

### 3. *Drew Ector Prosecutes the Class Action*

In late November 2013, Respondents filed a third amended complaint against Appellants (as defendants).[6] This iteration of the complaint alleged the same four causes of action against the same defendants, but with a different named plaintiff, Drew Ector.

More than a year later, in early 2015, Appellants and N&T entered into an agreement to toll the statute of limitations for Appellants' "desire to bring a claim against N&T for malicious prosecution of the [Class Action]." The parties (Appellants and N&T) entered into a number of amendments extending the expiration of the tolling period.

A few months later, in April 2015, Appellants (as defendants) moved to dismiss the Class Action for delay in prosecution pursuant to section 583.410 and California Rules of Court, rules 3.1340 and 3.1342.[7] The court granted the motion and dismissed the Class Action, ruling in relevant part that the named plaintiff did not diligently prepare for trial, the defendants

---

[6]     The record on appeal does not contain, and the register of actions does not reflect, *either* a substitution of attorneys (authorizing N&T, rather than N&B, as counsel of record) *or* an order appointing N&T (rather than N&B) as class counsel.

[7]     Section 583.410 provides in part:  "(a) The court may in its discretion dismiss an action for delay in prosecution pursuant to this article on its own motion or on motion of the defendant if to do so appears to the court appropriate under the circumstances of the case."

California Rules of Court, rule 3.1340 provides in part that, upon motion, the trial court "may dismiss an action under Code of Civil Procedure sections 583.410-583.430 for delay in prosecution if the action has not been brought to trial or conditionally settled within two years after the action was commenced against the defendant."  California Rules of Court, rule 3.1342 sets forth the procedure and the matters the court is to consider in proceedings under sections 583.410-583.430.

8

(Appellants here) were prejudiced by the delay, and the named plaintiff "w[ould] not be able to begin trial before the expiration of the 5[-]year statute (CCP 583.360[8])."

In June 2015, the court entered a judgment in favor of the defendants (Appellants here) and against Ector and dismissed the claims of the previously certified class. In post-judgment proceedings, as with Roehrig, Appellants brought a Civil Code section 1780, subdivision (e) motion to recover prevailing party attorney fees from Ector under the CLRA. (See fn. 4, *ante*.) In early 2016, the court denied the motion, explaining: "Defendant[s] persuasively establish[ ] that Plaintiff acted with complete disregard for the present litigation and caused his attorney to misrepresent facts to the Court. The Court [cannot], however, make the step to bad faith in continuing this action as the Court had previously certified the class finding technical violations of California Business and Professions [C]ode."

B.      *The Present Case (Malicious Prosecution)*

On February 13, 2018, Appellants (Area 55, LLC, and SAB Holdings, LLC) filed the present action against Respondents (N&T, Nicholas, and Tomasevic). In the operative first amended complaint (previously identified as the complaint), Appellants alleged one cause of action for malicious prosecution against the three defendants.

Respondents responded with an amended special motion to strike the complaint pursuant to the anti-SLAPP statute, section 425.16 (anti-SLAPP

---

8      Section 583.360 provides: "(a) An action shall be dismissed by the court on its own motion or on motion of the defendant, after notice to the parties, if the action is not brought to trial within ['five years after the action is commenced against the defendant' (§ 583.310)]. [¶] (b) The requirements of this article are mandatory and are not subject to extension, excuse, or exception except as expressly provided by statute."

9

motion). Appellants filed a lengthy written opposition. Respondents filed a reply to the opposition, and Appellants filed a surreply to the reply. We will discuss the details of the parties' presentations as necessary at part II.,*post*.

Following oral argument in January 2019, the court granted Respondents' anti-SLAPP motion and struck the complaint. The court first ruled that Respondents met their initial burden of establishing that the complaint arises out their constitutional right to petition. The court then ruled that Appellants did not meet their responsive burden of establishing a prima facie case to support a favorable judgment for malicious prosecution. More specifically, one of the elements of a cause of action for malicious prosecution is that the prior action have been terminated in favor of the malicious prosecution plaintiff (*Zamos v. Stroud* (2004) 32 Cal.4th 958, 965 (*Zamos*)); and the court ruled that the dismissal of the Class Action "did not constitute a termination on the merits of the underlying lawsuit," because "the plaintiffs could not be ready for trial in the less than four months remaining before expiration of the five-year [mandatory dismissal] statute," section 583.310 et seq. Notably, the court did not base its finding on the evidence presented, but rather on its recollection of the reason for its dismissal of the Class Action almost four years earlier.

Based on the order granting the anti-SLAPP motion, the court entered a judgment of dismissal in favor of Respondents and against Appellants. Appellants timely appealed from the order and the judgment.

## II. DISCUSSION

Section 425.16, subdivision (b)(1) provides in full: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be

10

subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."

In applying this statute, a court generally is required to engage in a two-step process. " 'First, the defendant must establish that the challenged claim arises from activity protected by section 425.16.' " (*Sweetwater, supra,* 6 Cal.5th at p. 940.) " 'If the defendant makes the required showing, the burden shifts to the plaintiff to demonstrate the merit of the claim by establishing a probability of success.' " (*Ibid.*) " 'Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute.' " (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 820 (*Oasis West*).)

We review de novo the grant of an anti-SLAPP motion. (*Sweetwater*, *supra*, 6 Cal.5th at p. 940.)

A.     *Prong One—Whether Appellants' Claim Arises From Protected Activity*

For purposes of the threshold determination whether the challenged cause of action is one arising from "protected activity," a person's "protected activity" is "any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue." (§ 425.16, subd. (b)(1).)  The anti-SLAPP statute defines subdivision (b)'s "act in furtherance of a person's right of petition . . . " to include "any written or oral statement or writing made before a . . . judicial proceeding," or "any written or oral statement or writing made in connection with an issue under consideration or review by a . . . judicial body." (§ 425.16, subd. (e).)

Here, the challenged cause of action is malicious prosecution. " ' "The plain language of the anti-SLAPP statute dictates that every claim of malicious prosecution is a cause of action arising from protected activity because every such claim necessarily depends upon written and oral statements in a prior judicial proceeding." ' " (*Medley Capital Corp. v. Security National Guaranty, Inc.* (2017) 17 Cal.App.5th 33, 43 (*Medley Capital*).) The parties agree. Thus, Respondents, as the moving parties, met their initial burden of establishing that Appellants' claims arose from "protected activity" for purposes of section 425.16, subdivision (b)(1). (See *Sweetwater, supra,* 6 Cal.5th at p. 940.)

Turning to the second prong, we now determine whether Appellants met their responsive burden of establishing a probability of prevailing on their malicious prosecution cause of action for purposes of section 425.16, subdivision (b)(1). (See *Sweetwater, supra,* 6 Cal.5th at p. 940.)

B.     *Prong Two—Probability of Appellants' Success*

In determining whether a plaintiff meets its responsive burden under the second prong, "the court shall consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." (§ 425.16, subd. (b)(2); see *Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1067 ["In addition to the pleadings, we may consider affidavits concerning the facts upon which liability is based."].) In doing so, " '[t]he court does not weigh evidence or resolve conflicting factual claims. Its inquiry is limited to whether the plaintiff has stated a legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment. It accepts the plaintiff's evidence as true, and evaluates the defendant's showing only to determine if it defeats the plaintiff's claim as a matter of law.' " (*Sweetwater*, *supra*, 6 Cal.5th at

12

p. 940, quoting *Baral v. Schnitt* (2016) 1 Cal.5th 376, 384-385 (*Baral*); accord, *Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3 (*Soukup*).)

Courts have described this procedure as a "motion for summary judgment in 'reverse.' Rather than requiring the *defendant* to defeat the plaintiff's pleading by showing it is legally or factually meritless, the motion requires the *plaintiff* to demonstrate that he possesses a legally sufficient claim which is 'substantiated,' that is, supported by competent, admissible evidence." (*College Hospital, Inc. v. Superior Court* (1994) 8 Cal.4th 704, 719 (*College Hospital*); accord, *Baral*, *supra*, 1 Cal.5th at p. 384 [" 'summary-judgment-like-procedure' "]; *Tichinin v. City of Morgan Hill* (2009) 177 Cal.App.4th 1049, 1062 ["a standard 'similar to that employed in determining nonsuit, directed verdict or summary judgment motions' "]; *Yu v. Signet Bank/Virginia* (2002) 103 Cal.App.4th 298, 317 ["plaintiff's burden as to the second prong of the anti-SLAPP test is akin to that of a party opposing a motion for summary judgment"], disapproved on other grounds in *Newport Harbor Ventures, LLC v. Morris Cerullo World Evangelism* (2018) 4 Cal.5th 637, 645.) Consistent with this summary-judgment-like procedure, the court "must draw all reasonable inferences from the evidence in favor of [the party opposing the anti-SLAPP motion]." (*Lee v. Kim* (2019) 41 Cal.App.5th 705, 720 (*Lee*).)

Despite the authority that says the plaintiff's evidence in opposition to the motion must be admissible at trial (e.g., *College Hospital*, *supra*, 8 Cal.4th at p. 719; *Sweetwater*, *supra*, 6 Cal.5th at p. 946 [collecting cases]), "evidence may be considered at the anti-SLAPP motion stage if it is *reasonably possible* the evidence set out in supporting affidavits, declarations or their equivalent will be admissible at trial" (*Sweetwater*, at p. 947, italics

added).  "Conversely, if the evidence relied upon *cannot* be admitted at trial, because it is categorically barred or undisputed factual circumstances show inadmissibility, the court may not consider it in the face of an objection."[9] (*Id*. at p. 949.)

On appeal, Appellants argue that, because they presented evidence of a prima facie case that the dismissal of the Class Action was on the merits, the trial court erred in ruling otherwise.  As we explain, we agree and will vacate the order granting the anti-SLAPP motion.  Rather than remand for consideration of the remaining issues raised by the parties in the anti-SLAPP motion proceedings, however, because the standard of review is de novo, we exercise our discretion to reach, in the first instance, these remaining issues. (*Golden Eagle Land Investment, L.P. v. Rancho Santa Fe Assn.* (2018) 19 Cal.App.5th 399, 422 [deciding prong two issue despite trial court's failure to reach it].)  As we further explain, we conclude that, under the applicable standard for anti-SLAPP motions, Appellants met their burden of establishing the requisite probability of prevailing on their malicious prosecution claim against Respondents, and Respondents did not establish as a matter of law a defense to Appellants' claim.

We begin our determination whether Appellants' complaint " 'lacks even minimal merit' " (*Oasis West*, *supra*, 51 Cal.4th at p. 820) by first analyzing the evidence Appellants submitted in support of each of the elements of their cause of action for malicious prosecution.  In this regard, to

---

9      In the trial court, Respondents filed 36 written objections to evidence that Appellants submitted in support of their opposition to the anti-SLAPP motion.  However, the record on appeal does not contain rulings on these objections, and Respondents do not argue on appeal that any specific evidence is (or would be at trial) inadmissible.  We thus consider all of the evidence Appellants presented.  (*Sweetwater*, *supra*, 6 Cal.5th at p. 949.)

14

establish a cause of action for the malicious prosecution of a prior civil proceeding, a plaintiff must plead and prove that the prior action: (1) " ' "was commenced by or at the direction of the defendant and was pursued to a legal termination in his, plaintiff's, favor" ' "; (2) " ' "was brought without probable cause" ' "; and (3) " ' "was initiated with malice." ' " (*Zamos, supra*, 32 Cal.4th at p. 965, quoting *Bertero v. National General Corp.* (1974) 13 Cal.3d 43, 50 (*Bertero*), italics omitted; accord, *Roche v. Hyde* (2020) 51 Cal.App.5th 757, 787 (*Roche*).[10]) We will then analyze whether Respondents established, as a matter of law, that the applicable statute of limitations bars Appellants' claim.

The tort of malicious prosecution does not have to be directed to an entire lawsuit or even to an entire cause of action. (*Bertero, supra*, 13 Cal.3d at p. 57, fn. 5 ["an action for malicious prosecution lies when but one of alternate theories of recovery is maliciously asserted"]; *Singleton v. Perry* (1955) 45 Cal.2d 489, 497 [" ' "it is not necessary that the whole proceeding be utterly groundless" ' "]; *Kreeger v. Wanland* (2006) 141 Cal.App.4th 826, 834 ["[a] claim of malicious prosecution may be based on a single *ground* for liability alleged in the complaint that lacks probable cause"; "a single cause of action that states several theories of liability will force the defendant to negate each theory to escape liability"].) Very simply, "someone may be liable for malicious prosecution for his or her active role in the malicious prosecution of only a *portion* of a proceeding." (*Zucchet v. Galardi* (2014) 229 Cal.App.4th 1466, 1484.) Where only a portion of the claim or complaint is maliciously prosecuted, the issue becomes one of proof of damages, not of

_____

10    Both *Zamos* and *Roche* are appeals from anti-SLAPP proceedings in malicious prosecution actions. (*Zamos, supra*, 32 Cal.4th at pp. 963-964; *Roche, supra*, 51 Cal.App.5th at p. 769.)

liability: "[I]n the case of the assertion of a maliciously prosecuted [claim] with one for which there was probable cause [citation], the burden of proving such an apportionment must rest with the party whose malicious conduct created the problem." (*Bertero*, at p. 60.)

1.  *First Element:  Favorable Termination*

For purposes of meeting their prong two responsive burden as to the first element of the cause of action for malicious prosecution, Appellants must present evidence of a prima facie case that the Class Action was commenced by Respondents and pursued to a legal termination in Appellants' favor. (*Zamos*, *supra*, 32 Cal.4th at p. 965.)  There is no dispute both that the Class Action was filed by N&B (the predecessor to N&T) and Nicholas and that the Class Action was prosecuted to judgment by N&T, Nicholas, and Tomasevic (previously identified as Respondents).

Here, in the Class Action, a judgment of dismissal was entered in favor of Appellants (i.e., the defendants in the prior action for purposes of Appellants' malicious prosecution claim) and against the named plaintiff, by which "[t]he action of the class" was also dismissed.  The judgment followed the trial court's ruling on cross-motions:  (1) The court denied a motion filed by Respondents (as counsel, on behalf of their clients, the named plaintiff and the certified class) to specially set the matter for trial before the expiration of the statutory deadline in which to bring the case to trial (§§ 583.360, 583.310); and (2) the court granted a motion brought on behalf of Appellants (the defendants in the Class Action) to dismiss the action for delay in prosecution (§ 583.410).  In its written order, the court reasoned:

> "The Court is not persuaded that [the named plaintiffs]
> have diligently sought to prepare the matter for trial.  [The
> current named plaintiff]s deposition has not been taken
> and was apparently cancelled . . . by [N&T], despite
> [counsel's] promises to the Court that it would proceed [the

16

next week]. The Class has not been notified despite certification [and appointment of class counsel more than three and a half] years ago. Defendants [(i.e., Appellants)] have persuasively argued that they will be prejudiced by an expedited trial, and that [the named] Plaintiff's delays have caused witnesses to become unavailable or difficult to locate. [¶] . . . [The current named] Plaintiff will not be able to begin trial before the expiration of the 5[-]year statute (CCP 583.360)."

We must now determine whether, for purposes of the current claim for malicious prosecution, the foregoing dismissal was a legal termination which reflects *on the merits* of the claims against Appellants (as the defendants) in the Class Action.

In *Jaffe v. Stone* (1941) 18 Cal.2d 146 (*Jaffe*), our Supreme Court explained: "The theory underlying the requirement of favorable termination is that it tends to indicate the innocence of the accused . . . . If [the dismissal] is of such a nature as to indicate the innocence of the accused, it is a favorable termination sufficient to satisfy the requirement. If, however, the dismissal is on technical grounds, for procedural reasons, or for any other reason not inconsistent with his guilt, it does not constitute a favorable termination."[11] (*Id.* at p. 150.)

" 'A " 'favorable' termination does not occur merely because a party complained against has prevailed in an underlying action. While the fact he has prevailed is an ingredient of a favorable termination, such termination must further reflect on his innocence of the alleged wrongful conduct. If the termination does not relate to the merits—reflecting on neither innocence of

---

[11] "Although the original proceeding in *Jaffe* was criminal, the gist of the statement is equally applicable to cases . . . where the main action is civil." (*Babb v. Superior Court* (1971) 3 Cal.3d 841, 846.)

17

nor responsibility for the alleged misconduct—the termination is not favorable in the sense it would support a subsequent action for malicious prosecution." ' " (*Roche, supra*, 51 Cal.App.5th at p. 788, quoting *Lackner v. LaCroix* (1979) 25 Cal.3d 747, 751 (*Lackner*).)  Where, as here, the prior action is terminated other than on the merits, in determining whether the termination " ' " ' *relate*[*s*] *to the merits*' " ' " (*ibid.*, italics added), " 'the court must examine *the reasons for termination* to see if the disposition reflects the opinion of the court or the prosecuting party that the action would not succeed' " (*Medley Capital, supra*, 17 Cal.App.5th at p. 47, italics added; accord, *Roche*, at p. 788).  "And should there be a conflict as to the circumstances of the termination, 'the determination of the reasons underlying the dismissal is a question of fact.' " (*Medley Capital*, at p. 47; accord, *Roche*, at p. 788; *Sycamore Ridge Apartments, LLC v. Naumann* (2007) 157 Cal.App.4th 1385, 1399 (*Sycamore Ridge*).)

We begin our analysis with the following guidance from our Supreme Court:

> " '*A dismissal for failure to prosecute . . . does reflect on the merits of the action. . . .*  The reflection arises from the natural assumption that one does not simply abandon a meritorious action once instituted.' "

(*Lackner, supra*, 25 Cal.3d at pp. 750-751 [termination of prior action by statute of limitations defense not related to merits], italics added, quoting *Minasian v. Sapse* (1978) 80 Cal.App.3d 823, 827 (*Minasian*) [termination of prior action by *dismissal for failure to prosecute* related to the merits] and quoted in this court's recent opinion in *Citizens of Humanity, LLC v. Hass* (2020) 46 Cal.App.5th 589, 609; *Sycamore Ridge, supra*, 157 Cal.App.4th at p. 1400.)  In *Minasian*, at page 827, the court explained that, when a discretionary dismissal for failure to prosecute reflects on the merits of the action, "that reflection is favorable to the defendant in the action."

18

*Minasian* was an appeal in a malicious prosecution action, where the sole issue was whether a discretionary dismissal of the prior action for failure to prosecute under the two-year statute was a favorable termination. (*Minasian, supra*, 80 Cal.App.3d at pp. 824-825.)  There, the court expressly ruled that "[a] dismissal for failure to prosecute under Code of Civil Procedure [former] section 583, subdivision (a) is not a dismissal on technical grounds within the meaning of" *Jaffe, supra*, 18 Cal.2d 146.[12] (*Minasian*, at p. 827.)  Relying on established Supreme Court authority almost a century and a half old, the *Minasian* court explained that " 'the failure of the plaintiff to prosecute his suit should be regarded as a concession of his inability to maintain it.' " (*Id.*, at p. 828, quoting *Dowling v. Polack* (1861) 18 Cal. 625, 628 ["dismissed for want of prosecution"].)

We now consider the showing by Appellants in support of their position.  Focusing on the order dismissing the Class Action for delay in prosecution, Appellants rely on the six findings expressed by the court.  Examining the reasons for the termination of the Class Action as we must (*Medley Capital, supra*, 17 Cal.App.5th at p. 47), we examine those findings.

First, in dismissing the Class Action, the court found:  "The Class has not been notified [of this class litigation] despite certification [and appointment of N&B as class counsel] years ago."  A reasonable inference from Respondents' failure to notify the class of both the existence of the class

---

12    The two-year discretionary dismissal statutes in the prior action in *Minasian, supra*, 80 Cal.App.3d 823, and in the prior action in this case (i.e., the Class Action) are essentially the same.  (Compare former § 583, subd. (a) [Stats. 1972, ch. 1014, §  1] with § 583.410.)  "[Current] Section 583.410 continues the substance of subdivision (a) of former Section 583."  (Cal. Law Revision Com. com., 15C West's Ann. Code Civ. Proc. (2011 ed.) foll. § 583.410, p. 494.)

and the appointment of class counsel *for more than three and a half years* is that their failure to proceed relates to and reflects on the merits, in that class counsel like Respondents do not abandon a meritorious action once a class has been certified.  (See *Lackner*, *supra*, 25 Cal.3d at p. 751; *Minasian*, *supra*, 80 Cal.App.3d at p. 827.)

Second, in dismissing the Class Action, the court found that the named plaintiffs (i.e., N&T's clients) did not "diligently . . . prepare the matter for trial."  Similarly, in a sixth finding, the court ruled that Ector, the second named plaintiff, "will not be able to begin trial before the expiration of the five[-]year [mandatory dismissal] statute (CCP 583.360)."  Although these findings refer to the trial preparation by the named plaintiffs in the Class Action, a represented litigant generally does not prepare a case for trial.  A litigant's *attorney* is tasked with preparation for trial, especially in a class action, where the unnamed class members do not participate directly with either the class representative or class counsel.  (See Weil et al., Cal. Practice Guide:  Civil Procedure Before Trial (The Rutter Group 2020) ¶ 14:39, p. 14-41; *Pettway v. American Cast Iron Pipe Co.* (5th Cir. 1978) 576 F.2d 1157, 1216.)  Here, in opposition to the anti-SLAPP motion, Appellants presented a declaration from Ector, in which he testified:

- "The main lawyer I dealt with at N&T was Alex Tomasevic.  I did not have more than two meetings with him, and did not meet with any other lawyers from N&T."

-  "When I revealed to N&T that I had no receipts or other documents, not even a credit card charge, to show for my purchase [of a Vinturi Aerator], N&T did not do anything I'm aware of to confirm that I had actually bought a Vinturi."

- "In the Third Amended Complaint that N&T filed on my behalf, N&T wrote in paragraph 25 that I had been 'damaged' and 'lost money' in connection with my wine aerator purchase. But, before N&T added me to the lawsuit, I did not feel like I had lost money. I had no reason to believe that the wine aerator I bought was inferior. And I did not suffer any emotional stress as a result of my purchase."

- "Even after being N&T's lead plaintiff in the underlying class action for more than two and a half years, I do not have any understanding of what components of the Vinturi . . . [A]erator are and are not made in the United States."

- "The wine aerator was never of any major significance in my life before I joined the underlying class action. N&T wrote in the Third Amended Complaint that I was 'dismayed' after my wine aerator purchase, but I don't really know the definition of that word or whether I'd be using it correctly."

- "To my recollection, there were never any settlement figures shared with me. [¶] . . . Until November 10, 2017, [which is more than two and a half years after the order dismissing the Class Action,] I also never learned of the settlement proposal that [the defendants in the Class Action] had communicated to [Tomasevic] on April 8, 2015 [two weeks prior to the hearing on the motion to dismiss], that would have involved my getting a release from [those defendants, i.e., Appellants in this malicious prosecution action] for any costs or for any claim for malicious prosecution in exchange for my dismissal of the [Class Action] case, since N&T never communicated that to me. I also never saw the Joint Request for Dismissal that [the defendants in the Class Action] had sent on April 27, 2015, [a few days after the hearing on the

21

motion to dismiss,] to N&T offering to waive costs and attorney's fees against me, as well as release any claims arising out of my prosecution of the case. . . .  I don't recall ever hearing from N&T about any settlement offers made by [the Class Action defendants] to let me out of the case without any consequences."

- "I don't recall anyone at N&T telling me [in or around April 2015] that [the defendants in the Class Action] had a pending motion to dismiss the case. . . .  I don't recall N&T ever telling me there was a requirement that the case be brought to trial within a certain amount of time. . . .  [¶] . . . [¶] . . .  On May 11, 2015, [which was approximately three weeks after the dismissal of the Class Action,] N&T sent me an email saying that, back on April 30, 2015, the Court 'issued orders on the motions' that 'all came down against us.' . . .  I don't know what that means, and I don't think I knew then that this was a dismissal. . . . [¶] . . .  [N&T] wrote that 'we will not be able to proceed without an appeal first.' . . . [¶] . . .  N&T never discussed with me the merits of an appeal.  I don't know if N&T ever filed an appeal of the dismissal of my case."

This evidence, and inferences from this evidence (including N&T's lack of communication with Ector), sufficiently establish that *N&T*, irrespective of the named plaintiffs, did not diligently prepare the case for trial.  The evidence further establishes that N&T, irrespective of the named plaintiffs, did not consider an appeal from the grant of judgment on the pleadings as to Roehrig.  From this evidence, a jury could reasonably find that Respondents' failure to proceed relates to and reflects on the merits, in that class counsel like Respondents do not abandon a meritorious action once a class has been

certified. (See *Lackner*, *supra*, 25 Cal.3d at p. 751; *Minasian*, *supra*, 80 Cal.App.3d at p. 827.)[13]

Third and fourth, in dismissing the Class Action, the court found both: (1) that Respondents failed to produce for deposition their client, Ector, the named plaintiff; and (2) that "despite promises to the Court that [Ector's deposition] would proceed" on April 29, 2015, N&T cancelled the deposition. This all occurred after the following 16-month effort by Appellants to get N&T to produce Ector for a deposition: an informal request in January 2014; a formal deposition notice in March 2014; another formal deposition notice in April 2014; informal exchanges of proposed dates during May 2014; a June 2014 email request for a date (with a response that N&T would check with its client); a July 2014 email request for a date (that went unanswered); an August 2014 email request for a date (that went unanswered); a September 2014 email request for a date (that went unanswered); a December 2014 email request for one of six specific dates in January 2015 (that went unanswered); a March 2015 email exchange in which Appellants' counsel requested the deposition on one of two specified dates in April (to which N&T

---

[13] On appeal, Respondents argue that Appellants' presentation is speculative, because Appellants failed to present "evidence or argument as to why they believe N&T did not prosecute [or appeal from the dismissal of] the case." (Underscoring omitted.) Respondents then characterize as a "speculative inference" Appellants' argument "that 'one does not simply abandon a meritorious action once instituted.'" We disagree with Respondents' statements. Appellants first presented *evidence* that Respondents neither prosecuted the certified Class Action nor appealed from its dismissal. Appellants then relied (in part) on this *evidence* in applying the *legal standard* that a dismissal for failure to prosecute "'does reflect on the merits of the action,'" based on "'the natural assumption that one does not simply abandon a meritorious action once instituted.'" (*Lackner*, *supra*, 25 Cal.3d at pp. 750-751, quoting *Minasian*, *supra*, 80 Cal.App.3d at p. 827.)

replied it would respond later, but did not); and a court order that the deposition proceed on April 29, 2015.

We acknowledge that, as a general rule, counsel cannot later be liable for malicious prosecution " 'solely because that attorney's client . . . unilaterally, and for reasons known only to herself, refuses to make discovery' " in the prior action. (*Daniels v. Robbins* (2010) 182 Cal.App.4th 204, 211, 221-222 (*Daniels*) [despite court order, the plaintiff in the prior action "refused to serve any written discovery responses or appear for a deposition"].) In contrast, here, Ector testified, N&T "did not inform me that the Court had ordered [my] deposition to proceed on . . . April 29, 2015." To the contrary, on April 28, an N&T attorney wrote to Ector that she was going to try to find a mutually agreeable date for his deposition "in the 'next two weeks,' " explaining, " '[o]pposing counsel is a real treat and I'd like to shut him up by getting new dates' " after the court-ordered date. N&T then gave intentionally false, inconsistent explanations when it refused to produce him for deposition: *To defense counsel*, N&T cancelled Ector's court-ordered deposition on the date of the deposition, stating that " '[a]n unexpected work obligation arose' " for Ector; yet, in a declaration *to the court*, the N&T attorney testified that " 'Ector's job requires that he travel for work, often on short notice.' "

In these regards, Ector testified, "I had not been the one to cancel my deposition for April 29, 2015, and I did not cause anyone at N&T to misrepresent facts to the Court." In fact, during the 14 hours between 6:00 a.m. and 8:00 p.m. on April 29, the date of the court-ordered deposition, Ector (who had told the N&T attorney that he would be returning to San Diego as of April 27) went to a restaurant for breakfast with his brother, returned home for a few hours, left and returned home a few hours later,

24

rearranged the furniture on his sundeck, attended a class or presentation at the University of San Diego, and again returned home—never going farther than six miles from his residence in Pacific Beach.

In at least some circumstances, the dismissal of a prior action as a result of a failure to provide discovery will satisfy the favorable termination element of a malicious prosecution claim. In *Ross v. Kish* (2006) 145 Cal.App.4th 188, for example, the trial court dismissed the prior action because Kish refused to be deposed. (*Id*. at p. 191.) In Ross's later action against Kish for malicious prosecution, the appellate court affirmed the trial court's denial of Kish's anti-SLAPP motion. (*Ibid*.) With regard to Ross's prong two showing to establish the requisite favorable termination of the prior action, the appellate court ruled: "[T]he dismissal of Kish's lawsuit for refusing to be deposed, *like the dismissal for failure to prosecute in* Minasian . . . , *supra,* 80 Cal.App.3d 823, reflects adversely on the merits of the action based on the natural assumption that one does not simply abandon a meritorious action once instituted. Consequently, the dismissal must be seen as a termination favorable to Ross." (*Ross*, at p. 200, italics added.) In *Ross*, because the dismissal of the prior action was based on the refusal by Kish (the plaintiff in the prior action) to attend his deposition, the court concluded that the dismissal of the prior action reflected on the merits. Here, for the same reason, a jury reasonably could find that *N&T*'s refusal to produce Ector for deposition, despite promises otherwise, "reflects adversely on the merits of the action based on the natural assumption that one does not simply abandon a meritorious action once instituted."[14] (*Ibid*.; see also

---

14    For example, and without limitation, Respondents may not have wanted Appellants to learn—as Ector ultimately testified in his declaration that Appellants submitted in opposition to the anti-SLAPP motion—that

*Lackner*, *supra*, 25 Cal.3d at p. 751; *Minasian*, *supra*, 80 Cal.App.3d at p. 827.)

Finally, in dismissing the Class Action, the court found that the "delays [by N&T on behalf of the named plaintiff] have caused witnesses to become unavailable or difficult to locate." This evidence supports an inference, if not an actual finding, that without the delays Respondents caused Appellants (the defendants in the Class Action) would have discovered facts that reflect adversely on the merits of the Class Action claims. That is because class counsel like Respondents do not abandon a meritorious action once a class has been certified. (See *Lackner*, *supra*, 25 Cal.3d at p. 751; *Minasian*, *supra*, 80 Cal.App.3d at p. 827.)

Based on our de novo review and the findings and evidence discussed above, we have little difficulty concluding both that the dismissal of the Class Action for a delay in prosecution based on a lack of diligence in preparing for trial " 'does reflect on the merits of the [Class A]ction' " (*Lackner*, *supra*, 25 Cal.3d at pp. 750-751), and "that reflection [on the merits] is favorable to [Appellants] in [this appeal]." (*Minasian*, *supra*, 80 Cal.App.3d at p. 827).

---

Ector had no receipts to show for the purchase of a Vinturi Aerator; that N&T did nothing to confirm or verify that Ector had purchased a Vinturi Aerator; that Ector never had any understanding of what, if any, components of the Vinturi Aerator were or were not made in the United States; that Ector met only twice with Tomasevic and with no other N&T attorney at any time; that Ector did not believe he suffered any injury; or that Ector had been recruited as a named plaintiff by a college friend, who was a friend of Nicholas's and who had been a class plaintiff himself, to be the named plaintiff in the Class Action because "the prior lead plaintiff had left and that they — the 'Tomasevic law firm' — needed a new plaintiff."

Respondents' arguments do not persuade us otherwise.[15]

Respondents' principal argument, and one we do not reject lightly, is that the judge who ruled on the anti-SLAPP motion is the same judge who dismissed the Class Action. With regard to the issue of whether the Class Action was terminated on its merits in 2015, in 2019 the judge ruled:

> "Here, the Court's dismissal did not constitute a termination on the merits of the underlying lawsuit and rather, was based solely on a technical issue — the plaintiffs could not be ready for trial in the less than four months remaining before expiration of the five-year statute. Because this is the same Court that dismissed the underlying case, there is no question about the Court's intentions in dismissing."[16]

Thus, Respondents argue, because the trial court's written order in 2019 tells us why the court dismissed the Class Action in 2015, there is no dispute or conflicting evidence as to whether the dismissal reflects on the merits.[17] We disagree.

---

[15]    Initially, we note that, in their points and authorities in the trial court, Respondents did not rely on any *evidence* that they contended would support a ruling that the dismissal of the Class Action was not a favorable termination on the merits. Their entire argument as to favorable termination was 11 lines on the final page of a brief that contained 20 pages of substantive presentation.

[16]    Respondents did not raise this argument, let alone brief the legal issues associated with such a ruling, in the trial court.

[17]    In making this argument, Respondents first acknowledge the following standards: "*Minasian*[, *supra*, 80 Cal.App.3d 823,] holds there is a presumption that a dismissal for failure to prosecute reflects on the merits"; "to overcome that presumption, the court would need to resolve a factual dispute as to the reason for Respondents' failure to prosecute [the Class Action]"; and the court may not "adjudicate a factual dispute" in its prong two consideration of the evidence.

27

In relying on his memory rather than the evidence presented by the parties, the trial judge did not apply the proper standard. As we set forth *ante* and as Respondents acknowledge in their appellate brief, in the prong two analysis, the court must "consider[ ] whether [Appellants] produced sufficient admissible evidence to establish the probability of prevailing on the merits on every cause of action asserted." (Citing *Soukup*, *supra*, 39 Cal.4th at p. 269.) Unfortunately, that is not what the trial court did here; instead, it considered matters outside of what the parties presented and ruled on a ground that neither party had considered or had a chance to dispute—i.e., the court's memory. Very simply, however, the judge's statement in 2019 of his recollection of the previously undisclosed reasons behind a written ruling in 2015 is not evidence.[18]

While the well-meaning trial judge used his years of experience on the bench and memory of a prior case in an apparent attempt to jump to the ultimate finding in this case, the anti-SLAPP process does not allow for such a procedure.[19] Instead, in prong two, the anti-SLAPP statute directs a

---

[18]    We note that, in their trial court submissions, neither side asked the trial judge to rely on his memory from the Class Action. In fact, such a request would have been inappropriate, since a trial court judge is not competent to testify "as to any statement, conduct, decision, or ruling, occurring at or in conjunction with the prior proceeding" (i.e., the Class Action), except as to statements or conduct not applicable here. (Evid. Code, § 703.5.)

[19]    The procedure employed by the court here is especially problematic, since the litigants were given no notice or opportunity to object or respond. In fact, despite a 42-minute oral argument hearing on Respondents' anti-SLAPP motion, the court did not advise the parties it was considering relying on its recollection, rather than the record before it, in deciding whether the Class Action was terminated in Appellants' favor.

28

procedure whereby the court " 'accepts the plaintiff's evidence as true' " and then determines whether such evidence establishes " 'a prima facie factual showing sufficient to sustain a favorable judgment.' "[20] (*Sweetwater*, *supra*, 6 Cal.5th at p. 940.) Moreover, the procedure employed here—by which the court relied on its memory from the Class Action four years earlier, rather than on the evidence presented—does not allow for meaningful review.

In our de novo review in this appeal, we have applied, and will continue to apply, the standard set forth by our Supreme Court *based on the record that was before the trial court* at the time it made its ruling—which does not include the individual judge's recollection of events almost four years earlier. As we explained prior to conducting our de novo review *ante*, we accepted Appellants' evidence "as true" and concluded that such evidence established a prima facie factual showing sufficient to sustain a finding of a termination in Appellants' favor. (*Sweetwater*, *supra*, 6 Cal.5th at p. 940.)

Respondents next argue that, even if we do not consider the trial judge's recollection, "there was no favorable termination as to the initial class representative, Roehrig, who was dismissed for lack of standing . . . [and d]ismissal for lack of standing is not a favorable termination" for purposes of a later claim for malicious prosecution. (Citing *Hudis v. Crawford* (2005) 125 Cal.App.4th 1586 (*Hudis*).) We reject this argument.

---

[20]    If, as our Supreme Court has analogized, we consider the prong two procedure like a "motion for summary judgment in 'reverse' " (*College Hospital*, *supra*, 8 Cal.4th at p. 719), then the trial court must determine, first, whether the moving party's initial showing meets a minimum standard (namely, that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law). (§ 437c, subds. (c), (p).) During this process, the court may not rely on its recollection of events—regardless whether the court's recollection is consistent or conflicts with the moving party's evidence.

First, there was no termination of the Class Action, favorable or not, when, in January 2014, the court entered a judgment of dismissal as to Roehrig only, based on the November 2013 order granting Appellants' motion for judgment on the pleadings—which expressly allowed "20 days leave to amend to add a new class representative." By then, the class had been certified for more than two years, and N&T's third amended complaint was pending on behalf of Ector as the named plaintiff. Regardless whether *Roehrig's claims* were dismissed because he had abandoned them years earlier, *the Class Action* was not terminated until the court dismissed it in April 2015. (See, e.g., *Department of Forestry & Fire Protection v. Howell* (2017) 18 Cal.App.5th 154, 196 ["Generally speaking, ' "there can be only one final judgment in a single action." ' "].)

Furthermore, the sole authority on which Respondents rely, *Hudis*, *supra*, 125 Cal.App.4th 1586, is distinguishable. In *Hudis*, a malicious prosecution case, the appellate court held that the defendant attorney's former clients (i.e., the plaintiffs in the prior action) lacked standing to prosecute the prior action for elder abuse against the malicious prosecution plaintiffs, because the former clients "had not been appointed as the personal representatives of [the decedent] and had not established that they were her successors in interest" for purposes of asserting a claim for elder abuse. (*Id.* at p. 1592.) In fact, their lack of standing in the prior action, which was not a favorable termination for malicious prosecution purposes, was based on a lack of "*standing* to state a cause of action," not on a lack of "*capacity* to sue." (*Ibid.*) In *Hudis*, the former clients never had the right to bring the claims that were dismissed. In contrast, the former client here (Roehrig) originally had standing to state the causes of action against Appellants (because he said that he had bought a Vinturi Aerator in reliance on the representation that it

30

was " 'Manufactured in the USA' "), but affirmatively abandoned them in his bankruptcy case.

More applicable is the case of *Lanz v. Goldstone* (2015) 243 Cal.App.4th 441 (*Lanz*), on which Appellants rely. There, like former plaintiff Roehrig here, the cross-complainant in the underlying action (i.e., the client of the attorney defendant in the later malicious prosecution action) had abandoned some of the claims in the prior action by failing to schedule them in her bankruptcy filings. (*Id*. at pp. 453, 462.) Contrary to the situation in *Hudis*, *supra*, 125 Cal.App.4th 1586, where the claimants in the underlying action never had the right to bring the claims that were dismissed, in *Lanz* the cross-complainant in the underlying action (like former plaintiff Roehrig here) originally had the right to bring the claims but then abandoned them. Under these circumstances, the *Lanz* court had no difficulty concluding that the dismissal of the cross-complaint in the underlying action was a favorable termination for purposes of a later malicious prosecution claim. (*Id*. at pp. 461-462.) As particularly apt is the *Lanz* court's description of *why* the dismissal of the cross-complaint in the underlying action reflects on the merits of the cross-complaint:

> "Appropriately analyzed, one could conclude that the failure to list the claims on the bankruptcy schedule reflected [the cross-complainant's] opinion 'that the [underlying cross-]action would not succeed.' [Citations.] . . . [¶] Regardless, the claims were in essence abandoned, and *such abandonment can be favorable termination, as is generally held . . . where an action has been dismissed for failure to bring it to trial within the statutory period for discretionary dismissal, as this reflects on the merits of the action*, a reflection that 'arises from the natural assumption that one does not simply abandon a meritorious action once instituted.' (*Minasian*[, *supra*,] 80 Cal.App.3d [at p.] 827.)"

(*Lanz*, *supra*, 243 Cal.App.4th at pp. 461-462, italics added.)[21] In short, the *Lanz* court ruled that the abandonment of a claim in a bankruptcy case results in the same favorable termination (for purposes of a later malicious prosecution claim) as a dismissal for failure to prosecute.

As their final argument, Respondents contend that "the law protects attorneys from malicious prosecution actions which ensue because of their client's recalcitrance in discovery." (Citing *Daniels*, *supra*, 182 Cal.App.4th at p. 221.) *Daniels* is unhelpful in this appeal, however, because in *Daniels* the client " 'unilaterally, and for reasons known only to herself, refuse[d] to make discovery.' " (*Id*. at p. 222.) Here, in contrast, there is no claim that the client, Ector, made the decision not to participate in discovery. As we explained *ante*, the court did not base the dismissal on *Ector's* failure to appear at his deposition. In its order dismissing the Class Action, the court expressly faulted *Ector's counsel*—i.e., N&T—both for cancelling client Ector's deposition and, in doing so, for reneging on its "promises to the Court that [the deposition] would proceed."

For the foregoing reasons, Appellants met their prong two responsive burden of presenting evidence, which if credited by a trier of fact, would establish a prima facie showing that the dismissal of the Class Action reflects favorably to Appellants on the merits of the claims asserted against them in the Class Action.

2.  *Second Element:  Lack of Probable Cause*

---

[21]  In their opening brief on appeal, Appellants cite *Lanz*, *supra*, 243 Cal.App.4th 441 for the proposition that the Class Action court's grant of judgment on the pleadings against Roehrig (based on his abandonment of his claims against Appellants in his bankruptcy case) "reflects on the merits as a matter of law." Respondents did not mention, let alone discuss or attempt to distinguish, *Lanz* in their appellate brief.

For purposes of meeting their prong two responsive burden as to the second element of the cause of action for malicious prosecution, Appellants must present evidence of a prima facie case that Respondents brought or maintained the Class Action without probable cause. (*Zamos*, *supra*, 32 Cal.4th at pp. 966, 973.)

"An action is deemed to have been pursued without probable cause if it was not legally tenable when viewed in an objective manner as of the time the action was initiated or while it was being prosecuted." (*Sycamore Ridge*, *supra*, 157 Cal.App.4th at p. 1402.) "Only those actions that any reasonable attorney would agree are totally and completely without merit may form the basis for a malicious prosecution suit." (*Zamos*, *supra*, 32 Cal.4th at p. 970.)

The tort of malicious prosecution "includes continuing to prosecute a lawsuit discovered to lack probable cause." (*Zamos*, *supra*, 32 Cal.4th at p. 973.) Expressly relying on its reasoning in *Zamos*, in *Soukup*, *supra*, 39 Cal.4th 260, our Supreme Court explained that "the maintenance of . . . an action discovered to lack probable cause may expose the plaintiff's attorney to liability for malicious prosecution." (*Soukup*, at p. 297.) "While an attorney is entitled to rely on information from his or her client for purposes of assessing a claim's legal tenability, '[a]n exception to this rule exists where the attorney is on notice of specific factual mistakes in the client's version of events.' " (*Olivares v. Pineda* (2019) 40 Cal.App.5th 343, 355 (*Olivares*).)

In *Olivares*, for example, the trial court denied an anti-SLAPP motion directed to a number of claims, including one for malicious prosecution; and the appellate court affirmed. (*Olivares*, *supra*, 40 Cal.App.5th at p. 347.) As relevant to this appeal, the appellate court concluded that the plaintiffs had presented sufficient evidence of a prima facie case for establishing the lack of probable cause element of the cause of action for malicious

33

prosecution. (*Id*. at pp. 355-356.) The court based its ruling on the showing by the plaintiff tenants that the defendant attorneys continued to prosecute an unlawful detainer action after they knew that the rent demand was based on "significant errors in [the landlord's] rent ledger." (*Id*. at p. 355.)

Here, N&B and Nicholas filed the class action on behalf of named plaintiff Roehrig in January 2010. Nine months later, in September 2010, Roehrig filed a Chapter 7 (liquidation) bankruptcy case; in December 2010, he received a discharge; and in the first week of January 2011, the bankruptcy court approved the trustee's report and closed Roehrig's bankruptcy case. Thus, as of the September 2010 bankruptcy filing, all of Roehrig's property (which included his claims against Appellants) became property of the bankruptcy estate. (11 U.S.C. § 541(a)(1); see *M&M Foods, Inc. v. Pacific American Fish Co., Inc.* (2011) 196 Cal.App.4th 554, 561-562.) However, because Roehrig never included on his bankruptcy schedules the claims he was asserting against Appellants, as a matter of law he abandoned them. That is because property not formally scheduled is abandoned to the estate and not returned to the debtor at the close of the bankruptcy case. (11 U.S.C. § 554(d); see *M&M Foods*, at p. 563.) Even if we assume that Respondents *initially* had probable cause to file the Class Action in January 2010, as of the date of Roehrig's deposition in the Class Action in June 2011, Respondents were formally advised of Roehrig's bankruptcy and given a copy of Roehrig's bankruptcy filings. At the deposition, Tomasevic was present and representing Roehrig.

Thus, Appellants argue, as of June 2011, Respondents knew (or should have known) that their client Roehrig had, as a matter of law, abandoned the claims Respondents were prosecuting on his behalf. With this knowledge, Appellants' argument continues, Respondents continued prosecuting the

34

claims *for more than two years* until the court granted judgment on the pleadings as to Roehrig in November 2013. Appellants conclude their argument with the contention that, at a minimum, Respondents' prosecution of the Class Action during this period was *the maintenance* of the action at a time they knew their client (Roehrig) had abandoned the claims. Although the record does not contain direct evidence that N&T had actual knowledge Roehrig had abandoned his claims, the record contains direct evidence that N&T knew all of the facts that effected an abandonment of Roehrig's claims as a matter of law. From this evidence, we have no difficulty inferring that N&T knew the legal effect of this uncontradicted evidence and, thus, no difficulty concluding that Appellants met their responsive burden of presenting a prima facie case that Respondents lacked probable cause to maintain the Class Action as of, at least, June 2011 when Appellants took Roehrig's deposition.

Respondents suggest that "any reasonable attorney" would not have known that, by his bankruptcy filings, Roehrig had abandoned (to the Chapter 7 estate) his claims against Appellants as a matter of law. (Underscoring omitted.) As an example, Respondents rely on the fact that Appellants did not raise Roehrig's bankruptcy and the resultant abandonment of his claims in opposition to Roehrig's motion to certify the class and appoint N&B as class counsel. With the parties emphasizing different evidence to support a finding of objective reasonableness, we neither weigh it nor resolve the dispute in these anti-SLAPP proceedings. (*Sweetwater, supra*, 6 Cal.5th at p. 940.) In any event, because "the extent of a defendant attorney's investigation and research" is not relevant to the determination of whether the underlying claims were "objectively tenable" (*Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 883 (*Sheldon*

35

*Appel*)), for purposes of determining the existence of lack of probable cause, we do not consider what any particular attorney (e.g., Appellants' trial counsel) may have done to investigate or research the claims.

Respondents further contend that an application of the "interim adverse judgment rule" establishes the requisite probable cause for Respondents to have prosecuted the Class Action during the more than two years after they knew the facts that, as a matter of law, effected an abandonment of Roehrig's claims against Appellants. Under the interim adverse judgment rule, a malicious prosecution defendant (here, Respondents) can establish probable cause for having brought the prior action (here, the Class Action), thereby defeating the later malicious prosecution claim (here, the present case), by showing an interim victory on the merits in the prior action, even where the prior action is ultimately terminated in favor of the defendant (here, Appellants). (*Parrish v. Latham & Watkins* (2017) 3 Cal.5th 767, 776-777 (*Parrish*); *Kinsella v. Kinsella* (2020) 45 Cal.App.5th 442, 447 (*Kinsella*).) We are not convinced that the interim adverse judgment rule applies here.

California courts have long held that a victory on the merits in the trial court, even if reversed on appeal, conclusively establishes the requisite probable cause to have brought the prior action. (*Holliday v. Holliday* (1898) 123 Cal. 26, 32 ["when a person is charged before a competent court having jurisdiction of the matter, and is tried and found guilty, the judgment rendered, unless it is shown to have been obtained by means of fraud, is *conclusive evidence of probable cause for making the charge*, even though it is afterward held to be unauthorized and reversed on appeal"; italics added]; *Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 817.) "The rationale is that claims which succeed after an adversary hearing *on the*

36

*merits*, even if later reversed, ' "are not so lacking in potential merit that a reasonable attorney or litigant would necessarily have recognized their frivolousness." ' (*Parrish, supra*, 3 Cal.5th at p. 776; [citations omitted].) That is because, unless the initial success was procured by certain improper means . . . , the claims 'cannot be "totally and completely without merit." ' (*Parrish*, at p. 776; [citations omitted].)" (*Kinsella, supra*, 45 Cal.App.5th at p. 455.)

In proffering the defense of the interim adverse judgment rule,[22] Respondents rely on the following rulings from the trial court in the Class Action:  a March 11, 2011 order overruling Appellants' demurrer to the second amended complaint;[23] a September 30, 2011, order certifying the plaintiff class and appointing N&B as class counsel; and an April 29, 2014 order denying Appellants' motion to decertify the plaintiff class.  However, Respondents have not established that any of the three interim rulings was, as required for an application of the interim adverse judgment, a victory on "*the merits* of the claim [in the Class Action], not those that rest 'solely on technical or procedural grounds.' " (*Parrish, supra*, 3 Cal.5th at p. 778, italics added.)

For example, with regard to the demurrer, the court's order overruling the demurrer expressly indicates that it did not reach the merits:  "[T]he

---

[22]    As a defense, application of the interim adverse judgment will succeed at this stage only if Respondents establish that it defeats Appellants' claim as a matter of law.  (*Sweetwater, supra*, 6 Cal.5th at p. 940.)

[23]    On appeal, Respondents tell us that the court decided "multiple demurrers" in their favor in the Class Action.  The record on appeal contains only one decided during the time Roehrig was the named plaintiff—i.e., the demurrer to the second amended complaint overruled by order filed March 11, 2011.

allegations for each of the four causes of action are sufficient for this stage of the pleadings."

Likewise, during the proceedings in which the court certified the class and later denied decertification, the court had no occasion to consider *the merits*, as opposed to the procedural status, of the claims against Appellants. That is because " '[t]he certification question is "essentially a procedural one that does not ask whether an action is legally or factually meritorious." ' " (*Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1023 (*Brinker*), quoting *Sav-On Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319, 326, quoting *Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 439-440 (*Linder*); accord, *Ayala v. Antelope Valley Newspapers, Inc.* (2014) 59 Cal.4th 522, 530 [in determining whether case should proceed as a class action, "the focus 'is on what type of questions—common or individual—are likely to arise in the action, *rather than on the merits of the case*' "; italics added], 531 ["the class certification inquiry must focus on 'whether the theory of recovery advanced by the proponents of certification is . . . likely to prove amenable to class treatment' "]; *Lockheed Martin Corp. v. Superior Court* (2003) 29 Cal.4th 1096, 1104.)[24]

---

[24] We acknowledge that, on occasion, " 'issues affecting the merits of a case may be enmeshed with class action requirements.' " (*Brinker*, *supra*, 53 Cal.4th at p. 1023, quoting *Linder*, *supra*, 23 Cal.4th at p. 443; see *Wal-Mart Stores, Inc. v. Dukes* (2011) 564 U.S. 338, 351 [At times, determination of whether a case should proceed as a class action "will entail some overlap with the merits of the plaintiff's underlying claim.  That cannot be helped."].)  In the present case, however, Respondents have not directed us to anything in the record from which we can conclude that the Class Action court's decision to certify the class or the later decision to deny decertification was merits-based.

We cannot avoid commenting on the anomaly Respondents present by relying on the motion to decertify the class in support of their argument that the denial of the motion in April 2014 is evidence that they had probable cause to maintain the Class Action. As of April 2014, the plaintiff class had been certified and N&B had been appointed class counsel *for over two and a half years*, yet neither N&B nor N&T had made any effort to give notice to the class. Just as that evidence supports the ruling that the dismissal of the action was a favorable termination reflecting on the merits (see pt. II.B.1., *ante*), that evidence also supports an inference that N&T lacked probable cause to maintain the Class Action; experienced class counsel like Respondents do not fail to give notice to a certified class for over two and a half years.

Thus, because Respondents have not established that the interim adverse judgment rule applies as a bar to the later malicious prosecution claim as a matter of law, Respondents have not defeated Appellants' prima facie showing that, at least as of June 2011, Respondents maintained the Class Action without probable cause.[25]

3. *Third Element: Malice*

For purposes of meeting their prong two responsive burden as to the third element of the cause of action for malicious prosecution, Appellants

---

[25] Appellants presented additional evidence and numerous additional arguments in support of what they consider Respondents' lack of probable cause in prosecuting the Class Action. By limiting our discussion to just one example of prosecuting the Class Action without probable cause, Appellants are not limited in the evidence or arguments they may present to the trial court in proving their claims on remand. We express no opinion as to whether this additional evidence or arguments support a finding of a lack of probable cause for purposes of proving malicious prosecution.

39

must present evidence of a prima facie case that Respondents brought or maintained the Class Action with malice. (*Zamos*, *supra*, 32 Cal.4th at p. 965.)

The malice element goes to Respondents' subjective intent in either initiating or continuing the Class Action. (*Olivares*, *supra*, 40 Cal.App.5th at p. 356; *Soukup*, *supra*, 39 Cal.4th at p. 292.) "As an element of malicious prosecution, malice 'reflects the core function of the tort, which is to secure compensation for harm inflicted by misusing the judicial system, i.e., using it for something other than to enforce legitimate rights and secure remedies to which the claimant may tenably claim an entitlement.' " (*Lanz*, *supra*, 243 Cal.App.4th at pp. 466-467.) In this context, malice "is not limited to actual hostility or ill will and may be present when proceedings are instituted or maintained primarily for an improper purpose." (*Olivares*, at p. 356; accord, *Lanz*, at p. 466.)

" 'Since parties rarely admit an improper motive, malice is usually proven by circumstantial evidence and inferences drawn from the evidence.' " (*Golden State Seafood, Inc. v. Schloss* (2020) 53 Cal.App.5th 21, 34 (*Golden State*) [anti-SLAPP appeal in malicious prosecution action].) Accordingly, " '[m]alice may also be inferred from the facts establishing lack of probable cause.' " (*Soukup*, *supra*, 39 Cal.4th at p. 292, quoted in *Golden State*, at p. 34.) As specifically applicable here, given our discussion of probable cause, *ante*, "malice can be inferred when a party *continues* to prosecute an action after becoming aware that the action lacks probable cause." (*Daniels*, *supra*, 182 Cal.App.4th at p. 226, quoted in *Golden State*, at p. 38, in *Lee*, *supra*, 41 Cal.App.5th at p. 727, and in *Cuevas-Martinez v. Sun Salt Sand, Inc.* (2019) 35 Cal.App.5th 1109, 1122 (*Cuevas-Martinez*).)

40

Respondents contend that "lack of probable cause alone is insufficient to show malice." (Citing *Jay v. Mahaffey* (2013) 218 Cal.App.4th 1522, 1543 [lack of probable cause is measured objectively, whereas existence of malice is measured subjectively].) We do not disagree. (See *Golden State, supra*, 53 Cal.App.5th at p. 38; *Daniels, supra*, 182 Cal.App.4th at p. 225; *Downey Venture v. LMI Ins. Co.* (1998) 66 Cal.App.4th 478, 498.) Here, however, in addition to the absence of probable cause (for maintaining the Class Action after becoming aware of the facts that resulted in an abandonment of Roehrig's claims),[26] we have findings by the trial court in the Class Action— in an order affirmed by this court (*Roehrig, supra*, D066790)—that Roehrig initiated and maintained his claim in bad faith. Although the order determining bad faith was directed to Roehrig, not to his attorneys, certain of the findings implicate counsel's bad faith as well.

For example, at his deposition, Roehrig testified that, before purchasing the Vinturi Aerator, his friend, Rones (who was in the business of selling a competing wine aerator) told Roehrig not only that the Vinturi Aerator was made in China, but also "which law firm he should call"—i.e., N&T. Once Appellants (defendants in the Class Action) subpoenaed Rones for his deposition, *N&B prepared* (and Roehrig signed) an errata sheet that

---

[26]    Consistent with our ruling that N&T lacked probable cause to maintain the Class Action after being advised of facts that effected an abandonment of Roehrig's claims (see pt. II.B.2., *ante*, in *Roehrig, supra*, D066790, we ruled: Roehrig's " 'fail[ure] to remedy the bankruptcy abandonment of the claim— even though given ample opportunity to do so by th[e trial] court' " fully supported the further finding " 'that [Roehrig] acted in both subjective and objective bad faith' " in prosecuting the Class Action. Respondents' continued prosecution of the Class Action for two years after knowing the facts that the court later found to demonstrate bad faith on Roehrig's part creates an inference of malice on Respondents' part as well.

41

deleted all 35 references to Rones "in an attempt to eliminate information about Rones's involvement in the purchase of the [Vinturi A]erator and the filing of this [Class Action]." (*Roehrig, supra,* D066790.) Significantly, as we noted in *Roehrig,* D066790, the trial court found the evidence of Roehrig's revised testimony, *effected by N&B,* to be "incredible and unpersuasive." As a result, the record fully supports the ruling that Roehrig bought the Vinturi Aerator and contacted Nicholas on the recommendation of Rones, who was in active litigation with Area 55 at the time and represented by N&B.

In addition, we further rely on the following facts related to N&T's investigation and research: Neither Tomasevic nor Nicholas did any investigation into whether Roehrig had abandoned his claims; Tomasevic did no bankruptcy research at any time prior to Appellants' motion to dismiss based on the abandonment; and there is no evidence that Nicholas did any bankruptcy law research at any time. Unlike probable cause which is determined on an *objective* standard, because the determination of malice is *subjective* (based on what the individual malicious prosecution defendant believed at the time of maintaining the underlying action), "the extent of a defendant attorney's investigation and research may be relevant to the . . . question of whether or not the attorney acted with malice." (*Sheldon Appel, supra,* 47 Cal.3d at p. 883.) For purposes of our prong two anti-SLAPP analysis, the evidence of the lack of N&T's investigation and research related to Roehrig's ability to prosecute his claims in the Class Action further supports an inference of malice—with no evidence or argument of an affirmative defense as a matter of law as to malice.

Accordingly, Appellants met their responsive burden of establishing a prima facie showing that Respondents prosecuted the Class Action with malice.[27]

4.     *Defense:  Statute of Limitations*

Asserting a statute of limitations defense, Respondents argue that, regardless of Appellants' prong two showing, Respondents' showing defeats Appellants' claims as a matter of law.  (See *Sweetwater*, *supra*, 6 Cal.5th at p. 940.)

Appellants' first argument in response (as it was in the trial court) is that Respondents waived their right to assert such a defense.  More specifically, Appellants contend that the waiver results from Respondents not properly pleading the defense in their answer to the complaint.  We agree.

Section 458, enacted in 1872 and never amended, provides in relevant part:  "In pleading the Statute of Limitations it is not necessary to state the facts showing the defense, but it may be stated generally that the cause of action is barred by the provisions of Section ___ (*giving the number of the section* and subdivision thereof, if it is so divided, *relied upon*) of the Code of Civil Procedure."  (Italics added.)

In the present case, Respondents filed both an answer and an amended answer to the first amended complaint (previously identified as "complaint"),

_____

[27]     As with their showing of probable cause, Appellants presented additional evidence and numerous additional arguments in support of what they consider Respondents' malice in prosecuting the Class Action.  By limiting our attention to the evidence related to Roehrig's abandonment of his claims, we do not intend to limit Appellants in the presentation of evidence or arguments they may present to the trial court in proving their claims on remand.  We express no opinion as to whether this additional evidence or arguments support a finding of malice for purposes of proving malicious prosecution.

and in both they failed to "giv[e] the number of the section . . . relied upon" (§ 458). In both answers, Respondents alleged the following statute of limitations defense, in full: "The Complaint, and each cause of action contained therein, is barred by the applicable statutes of limitations."[28] However, an answer that fails to specify the applicable statute (and subdivision, if applicable) " 'raise[s] no issue and present[s] no defense.' " (*Davenport v. Stratton* (1944) 24 Cal.2d 232, 248 (*Davenport*), quoting *Overton v. White* (1937) 18 Cal.App.2d 567, 574 [waiver of statute of limitations defense where the answer merely failed to "refer to the proper subdivision"].) Stated differently, where the defendant fails to comply with section 458's strict pleading requirements, the defendant "waives the defense" of the bar of the applicable statute of limitations. (*Martin v. Van Bergen* (2012) 209 Cal.App.4th 84, 91 (*Martin*).)

In *Davenport, supra*, 24 Cal.2d at page 247, our Supreme Court "h[e]ld that the provisions of section 458 of the Code of Civil Procedure must be strictly applied." Prior to reaching this holding, the court traced the history of the strict application to 1893 (*id*. at pp. 246-247), citing *Wolters v. Thomas* (1893) 3 Cal.Unrep. 843, 846 ["That there must be a strict compliance [with section 458] . . . has often been held"], citing *Manning v. Dallas* (1887) 73 Cal. 420, 421 [by not complying with § 458, "the attempt to plead [the statute of

---

28      Respondents' answer and amended answer to the complaint are not in the record on appeal. Appellants tell us that "N&T does not dispute that it failed to [include the section number(s) on which it relied]"; and, in fact, Respondents do not (and did not in the trial court) argue otherwise. (Nor have Respondents requested leave of court to amend their answer at any time.) Accordingly, on our own motion, we have augmented the record on appeal to include both Respondents' answer to the complaint (filed May 25, 2018) and Respondents' amended answer to the complaint (filed July 9, 2018). (Cal. Rules of Court, rule 8.155(a)(1)(A).)

limitations] must be treated as altogether a failure"]. Nothing has changed in 125 years: "This section 'has been strictly construed as requiring that the relevant statute and subdivision, if applicable, be pleaded, *otherwise the answer fails to raise the statute of limitations defense.*'" (*Southern California Edison Co. v. Severns* (2019) 39 Cal.App.5th 815, 827, italics added; accord, *Choi v. Sagemark Consulting* (2017) 18 Cal.App.5th 308, 322, fn. 7 ["section 458 has been strictly construed"].)

Based on the foregoing authorities and the record on appeal, we conclude that Respondents waived their potential defense based on a statute of limitations. (*Davenport, supra*, 24 Cal.2d at p. 248; *Martin, supra*, 209 Cal.App.4th at p. 91.)

Respondents present two arguments in opposition to a finding they waived a statute of limitations defense. Neither argument is persuasive.

First, Respondents rely on the fact that, *in their anti-SLAPP motion*, they gave "notice" to Appellants "that Respondents relied upon the defense that the malicious prosecution claim is barred by the one-year limitations [period] in . . . § 340.6."[29] (Citing *Tofte v. Tofte* (1936) 12 Cal.App.2d 111, 113 ["when a defendant relies for answer upon any provision of the statute of

---

[29] The general statute of limitations for malicious prosecution is two years. (*Stavropoulos v. Superior Court* (2006) 141 Cal.App.4th 190, 196-197; see § 335.1.) However, where the malicious prosecution defendant is an attorney, there is a split of authority as to whether the specific one-year limitations period applicable to actions against attorneys (§ 340.6) prevails over the more general "catch-all" two-year limitations period. (Compare *Connelly v. Bornstein* (2019) 33 Cal.App.5th 783, 799 [one year]; *Yee v. Cheung* (2013) 220 Cal.App.4th 184, 195 [one year]; *Vafi v. McCloskey* (2011) 193 Cal.App.4th 874, 877 [one year] with *Roger Cleveland Golf Co., Inc. v. Krane & Smith, APC* (2014) 225 Cal.App.4th 660, 680, 689 [two years], disapproved on other grounds in *Lee v. Hanley* (2015) 61 Cal.4th 1225, 1239.)

limitations applicable to cases of this nature he need not necessarily plead all of the statutes upon which he intends to rely in his separate defenses"].)

However, an anti-SLAPP motion *filed after an answer* is not the proper procedural vehicle for "pleading the Statute of Limitations," as required by section 458. In addition, for the following reasons, *Tofte* is not persuasive: It does not mention section 458 or any of the other binding authorities (some cited *ante*) to the contrary; it fails to follow a line of cases from the late 1800's to the present, including early and consistent instruction from our Supreme Court, in which section 458 has been strictly applied; it was decided before *Davenport*, *supra*, 24 Cal.2d 232; and our research has not disclosed any case that has followed the language in *Tofte* on which Respondents presumably rely.

Second, Respondents argue that Appellants forfeited their right to object to Respondents' waiver, because Appellants failed to demur to the answer. (Citing *Hydro-Mill Co., Inc. v. Hayward, Tilton & Rolapp Ins. Assocs., Inc.* (2004) 115 Cal.App.4th 1145.) We disagree. Contrary to Respondents' statement, to preserve a waiver objection under section 458, a plaintiff is not required to demur to a statute of limitations defense that fails to comply with section 458's specificity requirement. Here, Appellants objected at the first opportunity after Respondents raised the statute of limitations as a defense. Further, *Hydro-Mill*, on which Respondents rely, is inapplicable. It overlooks section 458's specificity requirement in a case where the defendant identified the section, but not the subdivision; and only one of the three subdivisions " 'could by any possibility be applicable to this case.' " (*Hydro-Mill*, at p. 1165.) Here, Respondents did not identify *any* statute in their answers; and although not a prerequisite to the strict enforcement of section 458, there is more than one potential statute of

46

limitations applicable here, and the parties do not agree as to which applies. (See fn. 29, *ante*.)

For the foregoing reasons, Respondents' showing in response to Appellants' prong two showing did not defeat Appellants' malicious prosecution claim as a matter of law.

5.    *Conclusion*

Where, as here, the plaintiff opposing the anti-SLAPP motion " 'can show a probability of prevailing on *any part of its claim*, the cause of action is not meritless' and will not be stricken." (*Oasis West, supra*, 51 Cal.4th at p. 820.) That is because a cause of action for malicious prosecution " 'lies when but one of alternate theories of recovery is maliciously asserted.' " (*Soukup, supra*, 39 Cal.4th at p. 292.)

Appellants here presented evidence of a probability of prevailing on their claim that Respondents maliciously prosecuted the Class Action from at least June 2011 (when they learned of the facts that resulted in Roehrig's abandonment of his claims against Appellants) through at least November 2013 (when the court granted judgment on the pleadings against Roehrig); and Respondents did not properly plead the statute of limitations defense they attempted to apply in response. Thus, for anti-SLAPP prong two purposes, Appellants' showing " 'stated a legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment,' " and Respondents' showing failed to " 'defeat [Appellants'] claim as a matter of law.' " (*Sweetwater, supra*, 6 Cal.5th at p. 940.)

### III.  DISPOSITION

The order granting Respondents' anti-SLAPP motion is vacated, and the judgment is reversed. Upon issuance of the remittitur, the superior court is directed to enter an order denying Respondents' special motion to strike

Appellants' first amended complaint.  Appellants are entitled to their costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(2).)

IRION, J.

WE CONCUR:


HUFFMAN, Acting P. J.


DATO, J.

**CERTIFIED FOR PUBLICATION**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| AREA 55, LLC, et al.,<br><br>    Plaintiffs and Appellants,<br><br>    v.<br><br>NICHOLAS & TOMASEVIC, LLP, et al.,<br><br>    Defendants and Respondents. | D075648<br><br><br><br>(Super. Ct. No. 37-2018-00007426-CU-NP-NC)<br><br>ORDER CERTIFYING OPINION FOR PUBLICATION |

THE COURT:

The opinion in this case filed January 29, 2021, was not certified for publication. The court has received a request to publish the opinion. (Cal. Rules of Court, rule 8.1120(a).)

Acting Presiding Justice Huffman and Justice Irion believe that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c). Justice Dato believes that the opinion meets the standards for publication specified in rule 8.1105(c), except for parts II.B.2.-II.B.4. of the opinion. Accordingly, the rule 8.1120(a) request for publication is GRANTED.

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and

ORDERED that the words "Not to Be Published in the Official Reports" appearing on page 1 of said opinion be deleted and the opinion herein be published in the Official Reports.

HUFFMAN, Acting P. J.

Copies to: All parties